ANTON E. NEMETH *v.* GUN RACK, LTD., ET AL.
(12799)

DUPONT, C. J., and LANDAU and SCHALLER, Js.

Argued February 21—decision released May 23, 1995

*James H. Lee,* for the appellant (plaintiff).

*F. Timothy McNamara,* with whom, on the brief, were *Michael T. Wade* and *Putnam H. Perry,* for the appellees (defendants).

DUPONT, C. J. The plaintiff appeals from a judgment denying his application for a turnover order made pursuant to General Statutes § 52-356b.[1] The plaintiff had obtained a judgment against the defendants for money damages, which was affirmed by this court in *Nemeth* v. *Gun Rack, Ltd.,* 33 Conn. App. 909, 633 A.2d 744 (1993). This appeal concerns the plaintiff's efforts to enforce that underlying judgment by levying on inventory of the corporate defendant,[2] which was allegedly

[1] General Statutes § 52-356b provides in relevant part: "(a) If an execution is issued, the judgment creditor may apply to the court for an order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.

"(b) The court may issue a turnover order pursuant to this section, after notice and hearing or as provided in subsection (c), on a showing of need for the order. If the order is to be directed against a third person, such person shall be notified of his right pursuant to section 52-356c to a determination of any interest claimed in the property.

"(c) The court may issue a turnover order against a judgment debtor, without notice or hearing, upon affidavit by the judgment creditor or another competent affiant stating facts from which the court concludes that there is a reasonable likelihood that the judgment debtor is about to remove the property from the state or is about to fraudulently dispose of the property with intent to hinder, delay or defraud his creditors. The court shall expeditiously hear and determine any motion by the judgment debtor to dissolve such an ex parte order."

[2] The defendants are Gun Rack, Ltd., Robert Carroll and Robin Carroll. The individual defendants were not named in the application for turnover order and are not involved in this appeal from the denial of that application for turnover order. A prejudgment remedy of attachment secured the personal liability of the individual defendants and did not involve Gun Rack, Ltd.

transferred to a third party[3] in violation of General Statutes § 42a-6-110 et seq.

The plaintiff raises two issues on appeal. They are (1) whether the trial court improperly held that General Statutes (Rev. to 1993) § 42a-6-110[4] precluded relief and (2) whether the trial court's conclusion that the transfer of goods from the defendant to the third party had not been concealed within the meaning of § 42a-6-110 was legally and logically correct and supported by the facts as found. Because we conclude that the plaintiff's application for a turnover order was timely made under § 42a-6-110 and that he is not precluded from relief by that statute, we need not reach the second issue of whether this transfer was concealed.

Judgment was rendered on September 21, 1992, in favor of the plaintiff against the defendants, Gun Rack, Ltd., a firearms and firearms equipment store, and Robert Carroll and Robin Carroll, the only officers, directors and shareholders of Gun Rack, Ltd. Execution of judgment was automatically stayed for a period of twenty days, until October 12, 1992, by operation of Practice Book § 4046.[5] On October 9, 1992, two days before the stay period ended, the defendants sold Gun Rack, Ltd.'s inventory of firearms, ammunition and

---

[3] The third party named in the plaintiff's application is Michael Miciukewicz, the person to whom the defendants transferred the goods that are the subject of the plaintiff's turnover application.

[4] General Statutes (Rev. to 1993) § 42a-6-110 was part of the Bulk Sales Act, General Statutes (Rev. to 1993) § 42a-6-101 et seq., which was repealed on October 1, 1993. The legislature has provided, however, in General Statutes § 42a-6-110b that "[r]ights and obligations that arose under sections 42a-6-101 to 42a-6-110a, inclusive, and section 42a-9-111 before their repeal on October 1, 1993, remain valid and may be enforced as though those sections had not been repealed." We, therefore, consider this case under the Bulk Sales Act. Neither party has contested the trial court's finding that there was a bulk transfer under General Statutes (Rev. to 1993) § 42a-6-101 et seq.

[5] As soon as the stay expired, the plaintiff attempted to collect the judgment by a series of executions.

accessories for $10,043.93 to a third party, who paid cash. The goods were removed from the defendant's store during a long weekend and taken to the third party's basement. Gun Rack, Ltd., thereafter went out of business.

On October 20, 1992, the plaintiff filed a judgment lien on Gun Rack, Ltd.'s inventory with the secretary of the state pursuant to General Statutes § 52-355a.

An examination of Gun Rack, Ltd., as a judgment debtor was scheduled for March 15, 1993. On March 11, 1993, however, the defendants provided the plaintiff with a series of documents that the plaintiff alleges disclosed to him for the first time the fact and the date of the sale of the store's inventory, the consideration and the identity of the purchaser.[6] The examination of judgment debtor was subsequently marked off the calendar.

On March 31, 1993, the plaintiff filed an application for a turnover order pursuant to § 52-356b. The plaintiff alleged that the corporate defendant transferred all of its inventory to a third party, in bulk and not in the ordinary course of business. The plaintiff sought to transfer possession of the defendant store's inventory from the transferee to himself, and alleged that the transfer of the inventory was ineffective as against him because there had been no compliance with the notice provisions of the Bulk Sales Act; General Statutes (Rev. to 1993) § 42a-6-110; and, therefore, the goods remained exposed to a property execution.

The hearing for this turnover application was held on June 4, 1993. The trial court ruled for the defendants and the transferee in an oral decision and held, without expressly finding, that there had been a bulk

---

[6] The plaintiff testified that he learned in October, 1992, that the goods were no longer in the store, but he assumed that they were still in the possession of the defendants.

sale, but that, even if there had been a transfer in violation of the Bulk Sales Act, § 42a-6-110 required the plaintiff to bring an action and to *complete* a levy of the goods within six months of the transfer, unless concealment of the transfer were pleaded. The court also ruled that since the plaintiff had failed to allege concealment in his pleadings, and had failed to produce sufficient evidence to prove concealment, the plaintiff was precluded from raising that claim.

On July 2, 1993, the plaintiff filed a second, amended application for turnover, with affirmative allegations of concealment of the transfer. A hearing was held on August 11, 1993, at which the trial court decided that its decision rendered at the June 4, 1993 hearing was an "ancillary matter on procedural grounds," and, "therefore," the amended application for "turnover order" alleging concealment could proceed. A hearing on the amended application for turnover order was held on August 18, 1993. The transcript of this hearing, and both parties' briefs in this court, indicate that the court and the parties treated this hearing as an extension of the June 4, 1993 hearing. The purpose of the second hearing was for the court expressly to determine whether there had been a bulk transfer, and if there had been a bulk transfer, whether the transfer had been concealed from the plaintiff.

After hearing testimony from the plaintiff, the transferee, and the defendant Robin Carroll, the court ruled that there had been a bulk sale, and that there had been "absolutely no compliance" with the Bulk Sales Act, but that the transfer had not been concealed. The court reinstated its original ruling that the plaintiff's claim was barred by § 42a-6-110 because the plaintiff did not complete a levy within six months of the transfer.

Before beginning our analysis, we must determine whether the date of the first or the second turnover

application should be used for purposes of applying § 42a-6-110, the Bulk Sales Act's statute of limitations. The transfer took place the weekend of October 9, 1992. The plaintiff's first turnover application was filed on March 31, 1993, which is well within six months of the transfer. If, however, the appropriate date to consider is July 2, 1993, the date of the second turnover application, then the plaintiff's application was filed more than six months after the date of transfer, and he is precluded from relief under the Bulk Sales Act. We conclude that this second application was akin to an amended pleading in the same case and that the appropriate date to consider for purposes of the Bulk Sales Act's statute of limitations is March 31, 1993. We treat the applications in the same manner as did the court and the parties. See *Steele* v. *Stonington,* 225 Conn. 217, 622 A.2d 551 (1993).

General Statutes (Rev. to 1993) § 42a-6-110 provides in relevant part: "No action under this article shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. . . ."[7] The use of the word "nor" in the statute indicates a continuing negation, involving two independent clauses. Actions and levies, therefore, are two separate types of proceedings under this statute. The trial court, however, characterized the plaintiff's turnover

[7] We note that the language implemented by the Connecticut legislature differs from the language recommended in the Uniform Commercial Code § 6-110, "LIMITATION OF ACTIONS," which provides: "(1) Except as provided in subsection (2), an action under this Article . . . must be commenced within one year after the date of the bulk sale.

"(2) If the buyer . . . conceals the fact that the sale has occurred, the limitation is tolled and an action under this Article may be commenced within the earlier of (i) one year after the person bringing the action discovers that the sale has occurred or (ii) one year after the person bringing the action should have discovered that the sale has occurred, but no later than two years after the date of the bulk sale. Complete noncompliance with the requirements of this Article does not constitute concealment."

application as an "action" under General Statutes (Rev. to 1993) § 42a-6-110 and read the language "[n]o action . . . shall be brought nor levy made" to mean that unless a party brings an action, secures a judgment and executes on that judgment by completing a levy of the transferred goods, all within six months of the bulk transfer, relief is precluded. We disagree with this interpretation.

First, we do not agree that an application for a turn-over order is an "action" as used in § 42a-6-110. Under the Uniform Commercial Code (UCC), " '[a]ction' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity and any other proceedings in which rights are determined." General Statutes § 42a-1-201 (1). In the present case, however, the plaintiff's rights against the defendants had been determined prior to the bulk transfer. The plaintiff's application for a turnover order, therefore, was a mechanism for collecting the already acquired judgment against the defendants, not a mechanism for determining the plaintiff's rights against the defendants.

We find further support for our construction of "action" in the UCC comments to § 42a-6-110, which state that "[t]he main sanction for non-compliance with the Article is that the transfer 'is ineffective against any creditor of the transferor.' . . . This means, e.g., that a judgment creditor of the transferor may levy execution on the property. . . . In such a case, which may be expected to be frequent, no 'action under this Article' will be necessary. The action will have been brought and prosecuted to judgment on whatever the claim was. The only thing done 'under this Article' will be the levy and resulting sale." Because an application for a turn-over order is a postjudgment proceeding, not an action, we are concerned here with the meaning of the phrase "levy made," rather than the phrase "action brought."

Neither the UCC nor the General Statutes define the term "levy." The UCC comment to § 42a-6-110, however, notes that "[t]he short statute of limitations is . . . made applicable to levies as well as actions. 'Levy,' which is not a defined term in the code, should be read broadly as including not only levies of execution proper but also attachment, garnishment, trustee process, receivership, or whatever proceeding, under the state's practice, is used to apply a debtor's property to payment of his debts." An examination of the statutory scheme of postjudgment proceedings in Connecticut and an examination of the legislative history of § 42a-6-110 et seq. sheds little light on what "levy made" means for purposes of the Bulk Sales Act's statute of limitations. We turn, therefore, to the canons of statutory construction and the common law definition of "levy" to aid us in our analysis of whether § 42a-6-110 precluded the plaintiff in this case from relief because the "levy made" was untimely.

First, we note that § 42a-6-110 is a statute of limitations. The term "limitation of action" has been defined to mean "a bar to the remedy on the plaintiff's cause of action occasioned by the lapse of time since the cause of action arose." 51 Am. Jur. 2d, Limitation of Actions § 2 (1970). A statute of limitations is "[t]he policy of the state as expressed in a statute . . . prescribing the period of time within which an action or proceeding in law or in equity must be brought." Ballentine's Law Dictionary (3d Ed. 1969). A statute of limitations, therefore, is intended to prevent the assertion of stale claims. It looks to the commencement of a cause of action rather than to the completion of a cause of action. Indeed, the limitations for the commencement of actions are usually entirely separate from the limitations on execution of judgments. The limitations on the execution of judgments are concerned with the commencement, not the completion, of collection proceed-

ings. See General Statutes § 52-598 (providing that party generally has twenty years to seek execution of judgment).

The phrase "nor levy made," therefore, must be construed to be consistent with the purpose of § 42a-6-110, which is to limit the time period in which a judgment creditor can assert his right to have the debtor's property applied to payment of the debt. We must also bear in mind the purpose of the UCC, which is to promote commerce. See *Lieb* v. *Dept. of Health Services*, 14 Conn. App. 552, 558, 542 A.2d 741 (1988).

Goods are levied as part of the process of execution of a judgment. "Execution is a remedy afforded by law for the enforcement of a judgment, its object being to obtain satisfaction of the judgment on which the writ is issued." 30 Am. Jur. 2d, Executions and Enforcement of Judgments § 43 (1994). "The execution of a writ of execution consists of two acts, the levy, or taking property into the possession of the sheriff for sale, and the execution sale itself." Id., § 213. "The levy of a writ of execution is an act in the course of a judicial proceeding. It has been described as an act of dominion over specific property by an authorized officer of the court which, but for the writ under which he proceeds, would be a trespass, conversion, or other unlawful invasion of a property right, and which results in the creation of a legal right to subject the debtor's interest in the property to the satisfaction of the debt of his judgment creditor . . . ." Id. "At common law a levy on goods consisted of an officer's entering the premises where they were and either leaving an assistant in charge of them or removing them after taking an inventory. Today courts differ as to what is a valid levy, but by the weight of authority there must be an actual or constructive seizure of the goods." Ballentine's Law Dictionary (3d Ed. 1969). "A levy on personal property is generally defined as a seizure of the property.

Thus, in most jurisdictions, it is essential to the completion of a levy of execution upon personal property that there be a seizure, either actual or constructive, of the property." 30 Am. Jur. 2d, Executions and Enforcement of Judgments § 234 (1994). "An execution officer has been held to have done all that is required to effect a levy on the contents of a judgment debtor's store, where he went to the store, saw the goods, asserted his right to them by virtue of his levy within the hearing of the judgment debtor, and indorsed on the execution the fact that a levy had been made." Id., § 238.

"Complimentary to the plaintiff/execution creditor's responsibilities with regard to a levy of execution is the sheriff's duty to execute the writ according to the plaintiff's instructions. The sheriff must follow the creditor's reasonable instructions regarding the time and manner of making the levy and must abide by special instructions to make an immediate levy, if practicable, when plaintiff demonstrates necessity." Id., § 217. "The courts have applied different standards with regard to the time within which a sheriff must levy an execution. Thus, it has been held that the execution officer should levy promptly, or on the earliest convenient day. . . . [O]ther courts . . . simply [require] a sheriff or other officer to exercise reasonable diligence in levying an execution." Id., § 219.

The postjudgment remedies outlined in chapter 906 of the General Statutes and Connecticut case law comport with these general definitions. In Connecticut, goods may be levied only after a judgment creditor whose debt has not been satisfied seeks judicial remedy, usually in the form of a writ of execution. See General Statutes § 52-350a et seq.; *Burchett* v. *Roncari*, 181 Conn. 125, 128, 434 A.2d 941 (1980). Therefore,

a levy cannot be "made" until a judgment creditor seeks relief pursuant to the postjudgment remedies provided by chapter 906.

This court must construe statutes so that "absurdity and mischief may be avoided." (Internal quotation marks omitted.) *Ford Motor Credit Co.* v. *B. W. Beardsley*, 208 Conn. 13, 20, 542 A.2d 1159 (1988). Furthermore, "[i]n the construction of statutes of limitation, the courts may, where the legislature has not sufficiently manifested its intention, consider the reasonableness of the result of a particular construction in the light of the practical effect of the adoption of a different construction." 51 Am. Jur. 2d, Limitation of Actions § 52 (1970). Because executing a judgment can be a complicated and often lengthy process, it is unreasonable to construe the phrase "levy made" in § 42a-6-110 to mean that the judgment debtor's goods must actually or constructively be seized within six months of a bulk transfer of the judgment debtor's goods.

The plaintiff's case here illustrates the unreasonableness of such an interpretation. The plaintiff sought a writ of execution almost immediately after the stay of the judgment expired in October, 1992, only to have it returned unsatisfied three months later in February, 1993. Shortly thereafter, the plaintiff learned of the bulk transfer of the judgment debtor's goods in October, 1992, and filed his application for a turnover order in March, 1993. The first hearing on that application was not held until more than six months after the transfer, in June, 1993, and the second hearing was held in August, 1993, making it impossible for the plaintiff to commence and complete a levy on the goods. The trial court ruled that this impossibility precluded relief for this plaintiff. We disagree, and conclude that the plaintiff's assertion of his right to apply the goods to the debt is all that can reasonably be required under this

statute. Adopting the trial court's interpretation of the statute would be analogous to holding that a personal injury suit brought within two years of the injury is barred because the case cannot be tried to completion and a judgment executed and satisfied within two years of the injury.

Furthermore, if we adopted the court's reasoning, a writ of execution validly issued on the last day within a limitations period would have to be carried into execution and the goods levied immediately on that day or the judgment could not be enforced at all. Again, the result is the thwarting of a judgment creditor's rights by the crowded civil dockets, over which the judgment creditor has no control. The vagaries of scheduling cases in terms of obtaining a judgment and a judgment lien should not oust a plaintiff of a statutory right he would otherwise have had.

We, therefore, interpret § 42a-6-110 to mean that one must *either* bring an action, where there is no underlying judgment, within six months of the bulk transfer *or* seek to levy the goods within six months of the transfer where there has been a judgment obtained prior to the bulk transfer. We construe the phrase "nor levy made" as speaking to the latest point in time when a judgment creditor can assert a right, not to the latest point in time when that right can be effectuated.

This interpretation is not inconsistent with the UCC's policy of promoting commerce because the transferee is put on notice within six months of the transfer to him that he may not have clear title. "Statutes of limitation are not to be used as technical devices to avoid liability where the defendant has received timely notice of an impending complaint and has in no way been prejudiced by the passage of time." *Goodyear Tire & Rubber Co.* v. *Tabs, Inc.,* 26 UCC Reporting Service 1290, 1293–94 (App. Sess. 1979). Our interpretation also pro-

motes commerce because the normal limitations on seeking execution of judgments are considerably shortened in favor of the transferee. See, e.g., General Statutes §§ 52-355a (c) and 52-598.

In the present case, therefore, we hold that by filing his application for a turnover order within six months of the bulk transfer, the plaintiff is not precluded from relief by § 42a-6-110.

The judgment is reversed and the case is remanded for a new hearing on the application for a turnover order.

In this opinion the other judges concurred.