******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CORSAIR SPECIAL SITUATIONS FUND, L.P. *v.* ENGINEERED FRAMING SYSTEMS, INC., ET AL.
## (SC 19953)

Rogers, C. J., and Palmer, McDonald,
Robinson and D'Auria, Js.

*Syllabus*

Pursuant to statute (§ 52-261 [a] [F]), a state marshal is entitled to a fee of 15 percent of the amount of the execution "for the levy of an execution, when the money is actually collected and paid over, or the debt . . . is secured by the officer . . . ."

The plaintiff obtained a judgment of more than $5 million against four defendants in a federal district court in Maryland and, in attempting to enforce that judgment, discovered that one of the defendant judgment debtors, D, had signed a contract with a third party, N Co., from Connecticut, entitling D to the payment of more than $3 million. On the basis of that information, the plaintiff obtained a writ of execution to enforce its judgment in the United States District Court for the District of Connecticut that required N Co. to deliver to the marshal the amount of the debt it owed to D. The plaintiff engaged a Connecticut state marshal, P, to serve the writ on N Co. Although P timely and properly served the writ, N Co. ignored the writ and paid D and another creditor $2,308,504. The plaintiff obtained an order from the District Court directing N Co. to turn over $2,308,504 to the plaintiff. N Co. appealed from that order, which was upheld by the Second Circuit Court of Appeals. When the plaintiff and P could not reach an agreement on the amount of P's fee for serving the writ, P intervened in the plaintiff's action, claiming that, pursuant to § 52-261, he was entitled to a fee of 15 percent of the amount of the execution, not the $30 flat fee the plaintiff claimed that P was due. Reasoning that the levy of an execution under § 52-261 was established through P's constructive seizure of the money via the properly executed writ, the District Court ordered the plaintiff to pay P a fee of $346,275.60. The plaintiff appealed to the Second Circuit, which determined that § 52-261 was ambiguous as applied to the facts of the present case and certified to this court the questions of whether P was entitled to a 15 percent fee under § 52-261 (a) (F) and whether, in making that determination, it matters that the writ was ignored and that the money that was the subject of the writ was procured only after the plaintiff, not P, pursued further enforcement proceedings in the courts. *Held* that, because P levied the execution, he was entitled to a 15 percent fee under the terms of § 52-261 (a) (F) even though the money was not paid directly to P but was procured only after the plaintiff pursued further enforcement proceedings: after determining that the statutory text of § 52-261 (a) (F) was ambiguous, this court applied settled rules of statutory construction, rules of grammar and common sense, and looked to the genealogy of the statute in concluding that the phrase "by the officer" in § 52-261 (a) (F) applied only to the condition that the debt be secured, and in concluding that, when an execution is levied on a debt owed that is in the possession of a third party, constructive seizure is effectuated when the writ of execution is properly served on, and the demand of payment is made to, the third party; the District Court found that P had properly served the writ on N Co., as a legal consequence of N Co.'s knowing violation of that writ in paying the debt to D and another creditor rather than directly to P, the plaintiff had the right to seek a turnover order from the District Court that resulted in N Co.'s obligation to pay more than $2 million to the plaintiff, P's proper service and demand were essential predicates to the recovery of that debt, and, as a result of the writ of execution and subsequent turnover order premised on N Co.'s violation of the writ, the money referred to in the writ was collected from N Co. and paid over to the plaintiff, and, thus, all of the statutory predicates to P's entitlement to the 15 percent fee were satisfied.

Argued October 20, 2017—officially released January 2, 2018

*Procedural History*

Application for a writ of execution to enforce a judgment rendered against the defendants in the United States District Court for the District of Maryland, brought to the United States District Court for the District of Connecticut, where the court, *Hall, J.*, granted the plaintiff's motion for a turnover order for funds paid to or on behalf of the defendant EFS Structures, Inc.; thereafter, the court, *Hall, J.*, granted the motion to intervene and for fees filed by Mark A. Pesiri, and the plaintiff appealed to the United States Court of Appeals for the Second Circuit, *Sack* and *Raggi, Js.*, with *Leval, J.*, concurring, which certified certain questions of law to this court concerning whether the intervenor was entitled to certain fees.

*Matthew S. Sturtz*, pro hac vice, with whom were *Paul G. Ryan* and, on the brief, *Gregory J. Spaun*, for the appellant (plaintiff).

*Neal L. Moskow*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee (intervenor).

*Opinion*

McDONALD, J. The United States Court of Appeals for the Second Circuit sought this court's advice as to whether a Connecticut state marshal is entitled to the statutory fee of 15 percent on the amount of the execution "for the levy of an execution, when the money is actually collected and paid over, or the debt . . . is secured by the officer"; General Statutes § 52-261 (a) (F);[1] when the marshal properly served the writ of execution on a third party holding a debt owed to the judgment debtor, but the judgment creditor received money from the third party only after a court issued a turnover order.

Pursuant to General Statutes § 51-199b (d), we accepted certification on the following questions from the Second Circuit:

"(1) Was [intervenor Connecticut State] Marshal [Mark A.] Pesiri entitled to a [15] percent fee under the terms of [§ 52-261 (a) (F)]?

"(2) In answering the first question, does it matter that the writ was ignored and that the monies that were the subject of the writ were procured only after the judgment creditor, not the marshal, pursued further enforcement proceedings in the courts?" *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, 863 F.3d 176, 183 (2d Cir. 2017).

We answer the first question: Yes. We answer the second question: No.

The Second Circuit's order sets forth the following facts that provide the backdrop to these issues. In the United States District Court for the District of Maryland, the plaintiff, Corsair Special Situations Fund, L.P., obtained a judgment of more than $5 million jointly and severally against four defendants (judgment debtors). See id., 177. While attempting to enforce its judgment, Corsair learned that one of the judgment debtors had signed a contract with a Connecticut based third party, National Resources,[2] entitling that judgment debtor to a payment of more than $3 million. See id., 178. On the basis of that information, Corsair caused its judgment to be certified for registration in another district and thereafter enrolled its judgment in the United States District Court for the District of Connecticut, which issued a writ of execution. See id.

Corsair then engaged Pesiri, a Connecticut state marshal, to serve the writ of execution on National Resources. See id. That writ stated in relevant part: " 'Pursuant to [General Statutes] § 52-356a, you are required to deliver to the [marshal] property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal

when the debt becomes due within four months after the date of issuance of this execution.' " Id.

Pesiri timely and properly served the writ on National Resources on September 30, 2011. National Resources not only ignored the writ, but, between October 3, 2011, and November 25, 2012, it paid Corsair's judgment debtor and another of its creditors $2,308,504. See id. Following protracted postjudgment discovery, Corsair obtained an order from the District Court commanding National Resources to turn over $2,308,504 to Corsair. See id. National Resources appealed from the order, which was affirmed by the Second Circuit. See *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, 595 Fed. Appx. 40 (2d Cir. 2014).

As the dispute between Corsair and National Resources was drawing to a close, a dispute arose between Corsair and Pesiri regarding Pesiri's fee. Pesiri moved to intervene in the action, claiming a right to the statutory fees under § 52-261 (a) (F) for levying an execution. See *Corsair Special Situation Funds, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 863 F.3d 178. Pesiri claimed that Corsair had expressed an intention to pay him only the flat fee for service of process, when he was owed 15 percent of the amount of the execution that had been paid to Corsair. See id., 179. Thus, Corsair claimed Pesiri was owed $30, plus mileage, whereas Pesiri claimed that he was owed $346,275.60. The District Court granted Pesiri's motion to intervene and ruled in his favor, ordering Corsair to pay Pesiri $346,275.60 in fees. See id. The court reasoned that the "levy of an execution" under § 52-261 was established through Pesiri's constructive seizure of the money by way of the properly executed writ. See id.

Corsair appealed from the order to the Second Circuit. That court examined the few Connecticut cases addressing this subject, none of which directly addressed the particulars of the present case, surveyed the statutory scheme, and determined that § 52-261 is ambiguous as applied to the facts of the present case. See id., 179–82. Two members of the panel viewed the term "levy" to be ambiguous as to whether it requires an actual or constructive seizure of the money/debt. See id., 182. They were troubled by the large fee in relation to Pesiri's efforts and by the prospect that the District Court's construction could "encourage a levying officer to do no more than serve a writ of execution with the hope that this will be credited as the 'levy of an execution' and rewarded accordingly." Id. A third member of the panel agreed with the District Court's construction of "levy of an execution" but found ambiguity elsewhere. That judge questioned whether the subsequent phrase in § 52-261 (a) (F), requiring action "by the officer," might modify both of the alternative conditions precedent to payment of the fee. See id., 186

(Leval, J., concurring). Accordingly, the Second Circuit certified the two questions to this court.

To answer those questions, we begin with the statutory text. Section 52-261 governs the payment of fees and expenses of officers serving process or performing other duties. After providing flat fees for process served, the statute provides in relevant part: "The following fees shall be allowed and paid . . . for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per cent on the amount of the execution, provided the minimum fee for such execution shall be thirty dollars . . . ." General Statutes § 52-261 (a) (F). We agree with the Second Circuit's conclusion that the statute is ambiguous as applied to the facts of the present case. Therefore, we are not constrained in our review by the plain meaning rule codified in General Statutes § 1-2z. Nonetheless, our objective is to ascertain the legislature's intention, applying settled rules of statutory construction. See, e.g., *Lieberman* v. *Aronow*, 319 Conn. 748, 756–57, 127 A.3d 970 (2015); *In re Tyriq T.*, 313 Conn. 99, 104–105, 96 A.3d 494 (2014).

We begin with the meaning of the phrase "levy of an execution." As our Appellate Court previously has recognized; see *Nemeth* v. *Gun Rack, Ltd.*, 38 Conn. App. 44, 52–53, 659 A.2d 722 (1995); it is generally accepted that a levy of an execution may be satisfied by a constructive seizure of the property that is the subject of the execution. See 30 Am. Jur. 2d 202, Executions and Enforcement of Judgments § 192 (2005) ("A levy on personal property is generally defined as a seizure of the property. Thus, in most jurisdictions, it is essential to the completion of a levy of execution upon personal property that there be a seizure, either actual or constructive, of the property." [Footnote omitted.]); Ballentine's Law Dictionary (3d Ed. 1969) p. 728 ("At common law a levy on goods consisted of an officer's entering the premises where they were and either leaving an assistant in charge of them or removing them after taking an inventory. Today courts differ as to what is a valid levy, but by the weight of authority there must be an actual or constructive seizure of the goods.").

What constitutes a constructive seizure under our law depends on the circumstances, i.e., the nature of what is to be seized and from whom it is to be seized. See General Statutes § 52-356a (a) (setting forth procedures for execution against nonexempt personal property and levying officer's responsibilities).[3] Those circumstances dictate the levying officer's authority, set forth in the writ of execution. When levying an execution on debt owed that is in the possession of a third party, constructive seizure is effectuated when the writ of execution is properly served on, and the demand of payment made to, the third party, provided that the debt has or will mature within the statutory term. See General Statutes

§ 52-356a (a) (4) (B). Compliance with such conditions establishes that the marshal has undertaken all of the measures legally available to the marshal to levy the execution. Cf. General Statutes § 52-356a (a) (4) (A) (requiring levying officer, upon failure of *judgment debtor* to make immediate payment upon demand, to levy on and take possession of nonexempt personal property in possession of judgment debtor if accessible without breach of peace). By so doing, the marshal has exposed the third party to legal consequences for noncompliance with the writ. See General Statutes § 52-365a (a) (5) (recognizing right of action against third party); see also 30 Am. Jur. 2d 573, Executions § 221 (1967) ("[g]enerally, it may be stated that a levy under a writ of execution to enforce a judgment for money is an act of dominion over specific property by an authorized officer of the court . . . which results in the creation of a legal right to subject the debtor's interest in the property to the satisfaction of the debt of his judgment creditor, to the exclusion of others whose rights are inferior").

The proper service of the writ of execution alone, however, does not entitle the marshal to the statutory commission. Proper service of the writ of execution entitles the marshal to a statutory flat fee. Compare General Statutes § 52-261 (a) (1) and (2) (providing $30 and $40 fee, respectively, for process served). The right to the commission fee accrues only after either of two conditions is satisfied: "when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer . . . ." General Statutes § 52-261 (a) (F). We therefore turn to the question of whether the phrase "by the officer" modifies the former, as well as the latter, condition.

Construing the phrase "by the officer" to apply only to the latter condition is supported by rules of grammar, the genealogy of the statute, and simple common sense. Under the last antecedent rule, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." (Footnote omitted; internal quotation marks omitted.) 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, pp. 487–89; see, e.g., *Foley* v. *State Elections Enforcement Commission*, 297 Conn. 764, 786, 2 A.3d 823 (2010) (applying rule); *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27, 420 A.2d 905 (1979) (same). There is not clear evidence of a contrary intention in the statutory text, as "collected" may refer to the debtor/third party from whom the money is being collected or the person collecting the money. Moreover, had the legislature intended for "by the officer" to apply to the first condition as well, it could have expressed such an intention more clearly

by inserting a comma between the second condition and that phrase (when the money is actually collected and paid over, or the debt or a portion of the debt is secured, by the officer).

Application of the last antecedent rule also is confirmed by a review of predecessors of § 52-261. For more than a century, the statute provided for the fee "when the money is actually collected and paid over, or the debt secured by the officer *to the acceptance of the creditor* . . . ." (Emphasis added.) General Statutes (1902 Rev.) § 4850; accord General Statutes (Rev. to 2001) § 52-261 (a) (6). It is clear that the italicized phrase would not have applied to the first condition. That phrase necessarily reflected that the officer exercises some discretion in the means or manner by which the debt is secured. The officer exercises no similar discretion when money is collected from the third party or debtor; the officer merely accepts the money that is provided.[4] Accordingly, if the phrase "to the acceptance of the creditor" did not modify the first condition, then the preceding phrase "by the officer" similarly would not modify that condition. Although the legislature recently excised the phrase "to the acceptance of the creditor" from the statute; Public Acts 2003, No. 03-224, § 10; it gave no indication that this change was intended to expand application of the phrase "by the officer" to the collection of money or that it understood the previous statute to have such a meaning. See 46 H.R. Proc., Pt. 17, 2003 Sess., p. 5443, remarks of Representative Michael P. Lawlor (explaining that proposed changes "will make it easier for the marshals to carry out their responsibilities and for the [State Marshal] Commission to conduct the oversight that is called for under the reforms of a number of years ago").

Finally, common sense dictates that we should not construe the statute to limit the fee to only those circumstances in which the marshal has personally collected the money and paid it over to the creditor, as Corsair suggests. See *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 608–609, 893 A.2d 431 (2006) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" [internal quotation marks omitted]). Granted, in the present case, National Resources knowingly disobeyed the writ not only in its failure to pay the money to Pesiri, but also in its transfer of the money levied upon to someone other than Corsair. However, Corsair's construction of the statute also would deprive a levying officer of the statutory commission if the third party violated the order in the writ by paying the levied upon funds directly to the creditor instead of the officer, whether mistakenly or intentionally. See, e.g., *Fair Cadillac Oldsmobile Corp.* v. *Allard*, 41 Conn. App. 659, 660, 677 A.2d 462 (1996) (after sheriff levied bank execution, bank paid funds directly to creditor, instead of to sheriff, at direction of creditor);[5] see

also *Masayda* v. *Pedroncelli*, Docket No. CV-94-01200878-S, 1998 WL 420779, *1 (Conn. Super. July 20, 1998) (after deputy sheriff served bank execution, judgment debtor paid judgment creditor from source other than bank account). Under Corsair's interpretation of the statutory scheme, the officer would not be entitled to the fee, even though the creditor received the benefit of the officer's service because the third party's obligation to the judgment creditor arose only as a result of the proper service of the writ of execution. Corsair's construction would create an incentive for judgment creditors to circumvent the statutory commission, a process that could inure to the benefit of both creditor and debtor by an agreement to reduce the debt by an amount less than the 15 percent fee in exchange for direct payment.[6] Our courts previously have applied common sense constructions to the facts of a given case involving the levy of an execution when a possible reading of the statute would have yielded a result that the legislature reasonably could not have intended. See *Preston* v. *Bacon*, 4 Conn. 471, 479–80 (1823) (sheriff entitled to fee when sheriff had substantially performed, and agreement by creditor and debtor's attorney prevented sheriff from completing final action statute required to be entitled to fee);[7] *Nemeth* v. *Gun Rack, Ltd.*, supra, 38 Conn. App. 54–55 (applying expansive interpretation of time limitation for applying for turnover order when facts made it impossible for judgment creditor to commence and complete levy on goods within period prescribed, and creditor had done everything that could reasonably be required under statute). "The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable." (Internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 407, 780 A.2d 903 (2001).

The requirements that we have articulated were met in the present case. The District Court found that Pesiri had properly served the writ of execution on National Resources. As a legal consequence, when National Resources knowingly violated the writ by paying the debt to the judgment debtor rather than to the marshal, Corsair had the right to seek a turnover order. That order resulted in National Resources having to pay more than $2 million to Corsair even though National Resources already had paid the judgment debtors. Pesiri's proper service and demand were essential predicates to recovery of that debt, a fact made evident by Corsair's own statements in its application for, and memorandum in support of, the turnover order. Therefore, under the facts of the present case, Pesiri levied the execution.

As a result of the writ of execution and subsequent turnover order premised on the violation of the writ,

the money described in the writ of execution was "collected" from National Resources and "paid over" to Corsair. Hence, all of the statutory predicates to entitlement to the statutory commission ultimately were satisfied.

We recognize that Corsair would not have been paid but for its substantial additional efforts, and that Pesiri undertook no further risk or efforts than he would have had the money never been collected from National Resources. However, marshals have exposure to substantial liability for improper or ineffective service of the writ, as such actions may deprive the judgment creditor of the ability to collect on the debt.[8] See General Statutes § 6-30a (a) (requiring state marshals to carry personal liability insurance for damages caused by reason of marshal's tortious acts, including erroneous service of civil papers); General Statutes § 6-32 (a) (requiring marshal to pay double damages for damages arising from marshal's failure to duly and promptly execute and return process); see also *Miller* v. *Egan*, 265 Conn. 301, 329–30, 828 A.2d 549 (2003) (concluding that insurance requirement indicates that liability is marshal's personally, and not liability of state); *Smith* v. *Yale*, 50 Conn. 526, 528 (1883) (action against sheriff for damages arising from his deputy's failure to make timely demand, which resulted in creditor's loss of security previously acquired).

We also recognize that a fee in excess of $300,000 is quite substantial in relation to the services actually performed by Pesiri. However, Corsair conceded at oral argument that it would have been obligated to pay Pesiri that same sum if National Resources had complied with the writ upon being served. Concerns about excessive fees in outlier cases should be directed to the legislature. The legislature could, as it has in other circumstances, set a cap on fees. See, e.g., General Statutes § 52-251c (setting caps on attorney contingency fee agreements); see also, e.g., General Statutes § 37-3a (setting cap on interest rates); General Statutes § 52-572 (a) (setting cap on damages for parent of minor tortfeasor). It would not be appropriate for this court to allow such a concern to dictate an interpretation of the statute, which would govern all executions, not only those for large sums of money.[9]

The answer to the first certified question is: Yes.

The answer to the second certified question is: No.

No costs shall be taxed in this court to any party.

In this opinion the other justices concurred.

[1] Section 52-261 has been amended twice since the revision in effect at the time of the underlying proceeding. See, e.g., Public Acts 2016, No. 16-64, §1. General Statutes (Rev. to 2013) § 52-261 (a) (6) was subsequently codified at subsection (a) (F). As there is no substantive difference between these versions of the relevant provisions for purposes of the certified issues, we refer to the current revision.

[2] In one of several decisions in the underlying action, the United States District Court for the District of Connecticut found that National Resources

is not itself a legal entity, but instead effectively functions as the trade name of a cluster of companies, including certain limited liability corporations named in the writ of execution. See *Corsair Special Situations Fund*, *L.P.* v. *Engineered Framing Systems, Inc.*, Docket No. 3:11-CV-1980 (JCH), 2013 WL 5423677, *2 (D. Conn. September 26, 2013), aff'd, 595 Fed. Appx. 40 (2d Cir. 2014).

[3] General Statutes § 52-356a (a) provides in relevant part: "(2) The property execution shall require a proper levying officer to enforce the money judgment and shall state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the money judgment was rendered, the original amount of the money judgment and the amount due thereon, and any information which the judgment creditor considers necessary or appropriate to identify the judgment debtor. The property execution shall notify any person served therewith that the judgment debtor's nonexempt personal property is subject to levy, seizure and sale by the levying officer pursuant to the execution . . . .

"(3) A property execution shall be returned to court within four months after issuance. . . .

"(4) The levying officer shall personally serve a copy of the execution on the judgment debtor and make demand for payment by the judgment debtor of all sums due under the money judgment. On failure of the judgment debtor to make immediate payment, the levying officer shall levy on nonexempt personal property of the judgment debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment, as follows:

"(A) If such nonexempt personal property is in the possession of the judgment debtor, the levying officer shall take such property into his possession as is accessible without breach of the peace;

"(B) With respect to a judgment debtor who is not a natural person, if such personal property, including any debt owed, is in the possession of a third person, the levying officer shall serve that person with a copy of the execution and that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer, provided, if the debt is not yet payable, payment shall be made when the debt matures if within four months after issuance of the execution . . . .

"(5) Levy under this section on property held by, or a debt due from, a third person shall bar an action for such property against the third person provided the third person acted in compliance with the execution. . . ." (Emphasis added.)

[4] The only discretion that we can envision a marshal exercising when money has been collected would be the subsequent timing of paying over the money to the creditor. However, for many years, this subject has been addressed by another statute. See General Statutes § 6-35 (requiring state marshal to pay over money collected by marshal within thirty days from date of collection and prescribing interest from date of collection for noncompliance); see also General Statutes (1902 Rev.) § 1761 (same, except interest accrues any time after demand for payment made); Public Acts 1984, No. 84-108, § 2 (amending § 6-35 to eliminate demand requirement and prescribe time period for payment before interest accrued). We note that, although § 6-35 governs obligations following the execution of a levy and clearly links the same terms at issue here—"collected" and "paid over"— to actions by the marshal, we are not persuaded that a similar linkage is compelled for purposes of fees under § 52-261 (a) (F). A deadline for payment and a penalty for noncompliance necessarily would apply only when the marshal has personally collected the money because there would be no concern about untimely payment if the money were collected by the court or judgment creditor.

[5] As that procedure was not relevant to the issue in the case, the Appellate Court noted that it took no position as to its legality or propriety. See *Fair Cadillac Oldsmobile Corp.* v. *Allard*, supra, 41 Conn. App. 660 n.1.

[6] We view this concern to be a more troubling one than the one expressed by two members of the Second Circuit panel that construing "levy of an execution" to mean proper service of the writ under the circumstances of the present case would encourage the marshal "to do no more than serve a writ of execution with the hope that this will be credited as the 'levy of an execution' and rewarded accordingly." *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 863 F.3d 182. Corsair conceded at oral argument before this court that there was no more that Pesiri lawfully could have done to collect the debt. When the writ authorizes the marshal to take further measures, then he or she will not have levied the execution merely by serving the writ. Moreover, as action by the marshal

increases the likelihood of payment, there is still a greater incentive for the marshal to act than to do nothing and take his or her chances.

[7] We note that the fee statute at the time *Preston* was decided expressly referred to the officer's collection of money. See General Statutes (1821 Rev.) tit. 83, § 12 ("[f]or levying and collecting every execution, where the money is actually collected and paid over, or where the debt is secured and satisfied by the officer, to the acceptance of the creditor, when the amount of the execution does not exceed [specified amount], the officer collecting the same, shall be allowed [specified amount]"). Because that condition had not been satisfied in *Preston*, the court looked to other conditions under which the officer could be entitled to the fee for levying the execution. See *Preston* v. *Bacon*, supra, 4 Conn. 479–80. In the absence of legislative history to explain the elimination of such express terms, we assume that the legislature intended to allow for a more expansive reading of the statute.

[8] In the context of service of process to commence a civil action, as opposed to service of a writ of execution, the accidental failure of suit statute would avoid liability in most cases. See General Statutes § 52-592 (a) ("[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed . . . the plaintiff . . . may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment").

[9] According to written testimony from the president of the Connecticut State Marshal's Association, Inc., submitted in support of the 2003 bill proposing to increase the marshal's fee from 10 percent to 15 percent, the vast majority of executions are small and uncollectible, thus often leaving marshals with no commission fees after investing significant time and effort. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 2003 Sess., p. 1964, remarks of Robert S. Miller.