## CITY OF NEW HAVEN *v.* JANICE M. BONNER ET AL.
## (SC 17142)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

of Malia's appraisal, which the trial court credited, any change in value was de minimis.

Argued September 20, 2004—officially released January 18, 2005

*Amy P. Blume*, assistant corporation counsel, for the appellant (plaintiff).

*Jennifer M. Ranciato Celentano*, for the appellee (named defendant).

*Jonathan D. Elliot* filed a brief for ACA International, as amicus curiae.

*Opinion*

BORDEN, J. The plaintiff, the city of New Haven, appeals[1] from the trial court's judgment of foreclosure

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

by sale of the plaintiff's municipal tax liens against the property of the named defendant, Janice M. Bonner.[2] The plaintiff claims that the trial court improperly disallowed a collection agency fee as part of the tax debt owed to it by the defendant pursuant to General Statutes § 12-166.[3] We agree with the plaintiff and, accordingly, we reverse the judgment of the trial court in part.

The record reveals the following facts and procedural background. For the tax years 1996 through 2002, the defendant failed to pay real estate taxes on property she owned at 124 Crescent Street, New Haven. The plaintiff brought this action seeking to foreclose its tax liens on the defendant's real property for the tax years in question. After the trial court granted the plaintiff's motion for summary judgment as to liability only, the plaintiff filed a motion for strict foreclosure. At the hearing on the motion, the plaintiff presented its affidavit of debt, which included the collection agency fee incurred by the plaintiff in its efforts to collect the taxes owed. According to the affidavit of debt, the defendant's total debt was $35,207.44, including a $2668.29 collection fee, for the tax years 1996 through 2002. After reviewing the affidavit of debt, the court scheduled a special hearing and instructed the plaintiff to present evidence at the hearing in support of its inclusion of the collection agency fee as part of the tax.

At the special hearing, C.J. Cuticello, the plaintiff's tax collector, testified that the plaintiff has a contract

---

[2] Although lienholders other than the plaintiff were also named as defendants in the trial court, none of them is a party to this appeal. We refer herein to Bonner as the defendant.

[3] General Statutes § 12-166 provides in relevant part: "Unless the context otherwise requires, 'tax', wherever used in this section, includes each property tax and each installment and part thereof due to a municipality, as such tax may have been increased by interest, penalties, fees and charges, including collection fees of a collection agency and attorneys' fees, provided such attorneys' fees shall be limited to those ordered by the court in any court action or proceeding brought to recover such tax. . . ."

with a collection agency, JER Revenue Services, LLC (JER), for the collection of delinquent property taxes. Cuticello testified further that, prior to referring a delinquent tax account to JER for collection, the plaintiff's general practice is to send the taxpayer two delinquency notices followed by two letters. Both letters inform the taxpayer that should he or she fail to resolve the delinquency, the account will be referred to a collection agency and the taxpayer will be obligated to pay an additional fee. Cuticello also testified that, once the account is referred to JER, the plaintiff sends out a revised bill to the taxpayer, adding the collection fee of 9 percent to the total amount owed. Although the taxpayer is billed immediately for the additional 9 percent fee upon referral of the account to JER, the plaintiff is obligated to pay JER only for successfully collected debts. Under the contract between the plaintiff and JER, the plaintiff is required monthly to pay JER 9 percent of the net collections received during that calendar month. Thus, if the taxpayer never pays the debt, JER receives no money from the plaintiff, regardless of any efforts it has made to collect that particular debt.

Sylvan Ross, the vice president of operations at JER, testified at the hearing that the services provided by JER under the contract include preparing and mailing collection letters, making telephone calls, performing skip tracing to locate the taxpayer, working with the plaintiff on collection strategies, and maintaining contact with the taxpayer and the mortgage companies. Further, if JER's collection efforts fail, JER refers the matter to local law firms to initiate foreclosure proceedings and thereafter monitors the foreclosures. Ross further testified that, because the agency handles the accounts in bulk, it does not maintain records of time devoted to individual cases.

At the hearing, the court refused to award the collection agency fee unless the plaintiff demonstrated what

specific actions JER had taken to collect the specific debt owed by the defendant, and expressed its intent to award the plaintiff only the precise value of the service received from JER regarding the defendant's individual account. Finding that the plaintiff had not made such a showing, the trial court rendered a judgment of foreclosure by sale,[4] but did not award JER's fee as part of the debt. This appeal followed.

The plaintiff claims that the trial court improperly failed to award JER's collection fee as part of the defendant's debt. We agree. We conclude that, pursuant to § 12-166, a municipality seeking to collect delinquent taxes is entitled to include as part of those taxes the collection fees of a collection agency, without having to establish the relationship between the amount of that fee and the specific services that the agency performed regarding that particular delinquent taxpayer or those specific delinquent taxes. Put another way, as in the present case, the municipality is entitled to collect from the taxpayer the collection fee charged to it by the agency at the time of the referral of the delinquent account.

The question of whether § 12-166 allows the trial court to award a collection fee for a particular debt owed by a delinquent taxpayer only if it is demonstrated that the fee reflects the value of the services performed by the collection agency in the collection of that particular debt is one of statutory interpretation, over which we have plenary review. *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 686, 855 A.2d 212 (2004).[5] "The process of statutory

---

[1] Although the plaintiff sought a strict foreclosure, it does not challenge on appeal the court's judgment of foreclosure by sale.

[5] "In *State* v. *Courchesne*, [262 Conn. 537, 567–78, 816 A.2d 562 (2003)], this court explained that, as part of the judicial task of statutory interpretation, we would not follow the so-called plain meaning rule, which operates to preclude the court, in certain cases, from considering sources in addition to the statutory text in order to determine its meaning. We are cognizant that, subsequent to our decision in *Courchesne*, No. 03-154, § 1, of the 2003

interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute[s] [themselves], to the legislative history and circumstances surrounding [their] enactment, to the legislative policy [they were] designed to implement, and to [their] relationship to existing legislation and common law principles governing the same general subject matter. . . . *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003)." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Board of Education*, supra, 686.

We begin our analysis with the language of the statute. Section 12-166 sets forth the powers and duties of municipal tax collectors and defines " 'tax' " for purposes of that section as including "each property tax and each installment and part thereof due to a municipality, as such tax may have been increased by interest, penalties, fees and charges, *including collection fees of a collection agency* and attorneys' fees, provided

Public Acts (P.A. 03-154), has legislatively overruled that part of *Courchesne* in which we stated that we would not require a threshold showing of linguistic ambiguity as a precondition to consideration of sources of the meaning of legislative language in addition to its text. *State* v. *Courchesne*, supra, 577. Public Act 03-154 provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. *Paul Dinto Electrical Contractors, Inc.* v. *Waterbury*, [266 Conn. 706, 716 n.10, 835 A.2d 33 (2003)]." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Board of Education*, supra, 270 Conn. 686–87 n.20. The present case does not implicate the limitation imposed upon our statutory review by P.A. 03-154 because the applicable statutory text is not plain and unambiguous.

such attorneys' fees shall be limited to those ordered by the court in any court action or proceeding brought to recover such tax. . . ." (Emphasis added.) The statute is silent as to whether the court has discretion to determine whether the collection fees reflect the value of the services performed on a particular account; it simply provides that such fees are included as part of the tax. By contrast, § 12-166 also includes attorney's fees as part of the tax, but imposes a limitation upon such fees "provided such attorneys' fees shall be limited to those ordered by the court in any court action or proceeding brought to recover such tax." Thus, the inclusion of attorney's fees as a part of the tax is conditioned on whether the court has ordered such fees. No similar limitation is imposed with regard to collection fees of a collection agency. By conditioning the inclusion of attorney's fees as part of the tax on the court's order, and by failing to place any similar condition on the inclusion of collection fees as part of the tax, the language of the statute strongly suggests that the court has no discretion to disallow a collection fee.

The legislative history of No. 93-318, § 2, of the 1993 Public Acts (P.A. 93-318), provides further support for our conclusion that the inclusion of the collection fee in the tax is not subject to the discretion of the court. The primary purpose of § 2 of P.A. 93-318, which added to § 12-166 the language, "including collection fees of a collection agency," was to clarify "the ability of municipalities to use private collection agencies to collect unpaid property taxes." 36 H.R. Proc., Pt. 25, 1993 Sess., p. 9021, remarks of Representative Jefferson B. Davis. Representative Davis further noted that P.A. 93-318, § 2, clarified "that any collection fee charged by [a] properly delegated collection agency can be included in the total tax due." Id. The legislature, thus, simultaneously acknowledged the legitimate role that collection agencies play in the municipal tax collection process and

expressed its intent that collection fees charged should "be included in the total tax due." Id. Furthermore, at the time of the amendment, then Representative M. Jodi Rell remarked on the fact that, at that time, many municipalities already were using collection agencies to aid them in collecting delinquent taxes. Id.

Moreover, when P.A. 93-318 was enacted, General Statutes § 36a-805 (a), which lists prohibited practices for consumer collection agencies, already prohibited collection agencies from charging a fee "in excess of fifteen per cent of the amount actually collected on the debt . . . ." General Statutes § 36a-805 (a) (13). We presume that the legislature was aware of existing statutes at the time that it enacted P.A. 93-318. See *Wiseman* v. *Armstrong*, 269 Conn. 802, 822, 850 A.2d 114 (2004). Thus, it is reasonable to infer, based on the legislative history of P.A. 93-318 and based on the existing text of § 36a-805 (a) (13), that the legislature was aware at the time of the amendment to § 12-166 that municipalities generally contract with collection agencies on a percentage fee basis.

There is nothing in the legislative history of P.A. 93-318 to contradict the strong linguistic suggestion that the amount of the collection fee, unlike the attorney's fee, is not subject to the approval of the court. Moreover, there is nothing, in either the language or the history of the legislation to support the requirement imposed by the trial court in the present case that the individual fee must be tied to the collection agency's efforts on a case-by-case basis. In addition, the obvious policy underlying the statute is that, if a municipality chooses to employ a collection agency to collect delinquent taxes, the cost of that collection should be borne by the delinquent taxpayers rather than by those who duly pay their taxes. Accordingly, on the basis of the language of the statute, its relationship to § 36a-805 (a) (13), its legislative history and its policy, we conclude

that the trial court did not have discretion under § 12-166 to require, as a condition to the inclusion of the collection fee as part of the tax, that the fee must be shown to be related to the value of the services performed in the collection of the particular tax owed by the defendant.[6]

The defendant argues that we should affirm the trial court's judgment on the alternate ground that, because she never received notice of the collection fee, the imposition of the fee as a tax violated her right to due process under the fourteenth amendment to the United States constitution and article first, §§ 1, 2 and 8, of the Connecticut constitution. The plaintiff claims that this argument is not properly before this court because the defendant never raised it in the trial court. The defendant claims, however, that she did raise this claim in the trial court. We agree with the plaintiff.[7]

In determining whether the defendant has preserved this issue for review, we are mindful of her pro se status in the trial court. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants

---

[6] We note that this case does not present a situation in which the collection fee is so disproportionate to the amount of taxes due that it is unconscionable or egregious. Thus, that question is not before us, and we express no opinion on it. In this connection, we note that General Statutes § 36a-805 (a), which lists prohibited practices for consumer collection agencies, provides some guidance on the presumptive reasonableness of this particular collection fee. Specifically, § 36a-805 (a) prohibits such agencies from charging a fee "in excess of fifteen per cent of the amount actually collected on the debt . . . ." General Statutes § 36a-805 (a) (13). Although the present case does not involve a consumer collection fee, the ceiling imposed by the legislature in that context nevertheless provides support for the proposition that a 9 percent collection fee added to a delinquent tax is not unconscionable or egregious.

[7] Although the defendant proposed additional alternate grounds for affirmance, the record does not show that she raised any of these claims in the trial court, and the defendant does not claim that she did. Therefore, in the absence of a sufficient record, we decline to address them. See *State* v. *Linares*, 232 Conn. 345, 391 n.19, 655 A.2d 737 (1995).

and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *Vanguard Engineering, Inc.* v. *Anderson*, 83 Conn. App. 62, 65, 848 A.2d 545 (2004). Nonetheless, "[a]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 861, 859 A.2d 932 (2004).

"Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 82, 848 A.2d 395 (2004). This rule applies equally to alternate grounds for affirmance. See *Thomas* v. *West Haven*, 249 Conn. 385, 390 n.11, 734 A.2d 535 (1999) ("[t]he appellee's right to file a [Practice Book] § 63-4 [a] [1] statement has not eliminated the duty to have raised the issue in the trial court" [internal quotation marks omitted]), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

Under these standards, we conclude that the defendant did not properly raise her due process claim before the trial court. Specifically, the defendant never alleged in any pleading that her right to due process had been violated. Thus, when the plaintiff appeared at the hearing ordered by the court, it had no notice that the question of whether the defendant had received the delinquency notices, letters and the revised bill was at issue. Furthermore, the trial court did not address the

issue, even at the hearing, and the defendant did not request that the trial court make the requisite factual findings regarding whether she received notice of the collection agency fee. Thus, the factual predicate of the defendant's due process claim, namely, that she did not receive notice of the collection fee, is not part of this record.[8]

The defendant's claim that she raised the due process issue of notice in the trial court at the special hearing is unpersuasive. She focuses on two exchanges during the hearing. First, when the defendant questioned Ross on the stand, she stated that she never had received a registered or certified letter from anyone regarding the collection agency fee, and she asked Ross what type of contact he had made with her. She also asked Ross whether he could produce copies of letters that he may have sent to her or records of telephone conversations he may have had with her or her husband. Second, when the defendant was testifying under oath on the stand, the court questioned her as to whether she had anything to say in regard to the evidence presented during the hearing. The defendant responded that she "just never heard from anybody." As we have indicated, the plaintiff had no notice prior to the hearing that it would be required to prove specific notice to the defendant of the collection fee. In addition, the record is bereft of any legal claim by the defendant of a due process violation. Simply put, this record does not establish that the defendant properly raised a due process claim in the trial court.

The defendant also claims that the trial court raised the issue of due process sua sponte when it questioned Cuticello regarding whether the letters sent out by the plaintiff informed the taxpayer of the collection fee.

---

[8] We do not intimate by this discussion that a lack of such notice necessarily would constitute a due process violation.

We decline to draw the broad inference suggested by the defendant. The trial court's questions do not indicate that it had a particular concern with the defendant's right to due process; the court did not make a factual finding that she had no notice of the collection fee; and at no time did it indicate in any way that it understood the defendant to have raised a due process claim.

The judgment is reversed in part and the case is remanded to the trial court for recalculation of the debt and for new terms of the foreclosure sale.

In this opinion the other justices concurred.