******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

O'BRIEN-KELLEY, LTD *v.* TOWN
OF GOSHEN ET AL.
(AC 41443)

Alvord, Sheldon and Moll, Js.

*Syllabus*

The plaintiff property owner sought to recover damages for conversion from the defendant state marshal, who had sought to recover delinquent real estate taxes and interest from the plaintiff on behalf of the town of Goshen. The town tax collector had issued to the plaintiff a delinquent notice, which stated that if payment in full was not timely submitted to the town, collection of the delinquent taxes could be enforced by, inter alia, having a state marshal serve on the plaintiff an alias tax warrant pursuant to statute (§ 12-162 [c]). When the plaintiff failed to pay the delinquent tax bill, the tax collector issued the tax warrant to the defendant, who then mailed a letter to the plaintiff informing it that he was in receipt of the tax warrant and that it authorized him to collect the delinquent real estate taxes. The plaintiff thereafter made payments to the tax collector, a portion of which was paid to the defendant, in accordance with § 12-162, as his fee of 15 percent of the tax, interest, fees and costs. The plaintiff alleged that the defendant was not entitled to the 15 percent fee under § 12-162 because he did not execute on the tax warrant or collect the delinquent taxes, but merely mailed notice of the tax warrant to the plaintiff, which prompted the plaintiff to pay the delinquent tax and interest to the town directly before the warrant was served. The trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant, from which the plaintiff appealed to this court. *Held* that the trial court properly granted the defendant's motion for summary judgment and concluded that the defendant was entitled to the 15 percent fee under § 12-162; that court, which carefully reviewed the record before it and thoroughly reviewed the applicable statutory language, its legislative history and relevant case law, properly concluded that, by sending the demand letter and a copy of the tax warrant to the plaintiff, the defendant placed the plaintiff on notice of its legal obligation to pay the delinquent taxes and his responsibility to collect them, and thereby constructively executed the tax warrant, which thereby entitled the defendant to his statutory fee under § 12-162.

Argued February 11—officially released June 4, 2019

*Procedural History*

Action to recover damages for, inter alia, conversion, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the action was withdrawn as against the named defendant et al.; thereafter, the court, *Bentivegna, J.*, granted the motion for summary judgment filed by the defendant Arthur R. Quinn III and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*James Stedronsky*, for the appellant (plaintiff).

*Thomas Plotkin*, with whom, on the brief, was *Joseph B. Burns*, for the appellee (defendant Arthur R. Quinn III).

*Opinion*

SHELDON, J. In this action arising from an alias tax warrant issued by the town of Goshen for delinquent municipal real estate taxes, the plaintiff, O'Brien-Kelley, Ltd., appeals from the summary judgment of the trial court rendered in favor of the defendant Arthur R. Quinn III,[1] a state marshal, which concluded that the defendant was entitled, under General Statutes § 12-162 (c), to be paid a 15 percent statutory fee for executing the subject tax warrant. The plaintiff claims that the trial court erred in holding that the defendant was entitled to be paid the statutory fee because the defendant had not executed on the tax warrant or collected the delinquent taxes, but merely mailed notice of the tax warrant to the plaintiff, prompting the plaintiff to pay the delinquent tax and interest to the town directly before the warrant was served. We disagree, and, accordingly, affirm the judgment of the trial court.

The following undisputed facts are relevant to our resolution of this appeal. The plaintiff is a Connecticut corporation having offices at 39 West Street in Litchfield. It owns a single-family lakefront house at 72 Sandy Beach Road in Goshen, which it manages, by and through its president and sole member, Edward James Murphy, Jr., for a private, extended family.

In February, 2016, the tax collector for the town of Goshen determined that the plaintiff had failed to pay the January 1, 2016 installment of its 2014 property tax bill. Therefore, on February 9, 2016, the tax collector issued a delinquent notice, notifying the plaintiff that it owed the outstanding tax, plus interest calculated through February 29, 2016. The notice expressly stated that the plaintiff owed a total of $3302.21, consisting of $3206.03 in back taxes and $96.18 in interest.

In March, 2016, the tax collector further determined that the plaintiff still had not paid its January 1, 2016 installment of its 2014 property tax bill. Consequently, on March 8, 2016, the tax collector issued to the plaintiff a notice of intent to lien, in which she indicated that the plaintiff owed $3206.03 in delinquent taxes, plus interest, calculated though April 30, 2016, in the amount of $192.36, for a total amount due of $3398.39. The notice of intent to lien[2] indicated that payment in full of the delinquent tax bill was due by April 12, 2016, and that if that payment was not timely submitted, the tax collector could enforce collection of the plaintiff's delinquent account, at the expense of the plaintiff, by any of several means, including assigning the plaintiff's account to a state marshal for the service of an alias tax warrant.

The plaintiff once again failed to pay its delinquent tax bill by the April 12, 2016 due date. Consequently, on April 26, 2016, the tax collector issued a "Property Alias Warrant" (alias tax warrant) to the defendant,

commanding the defendant to collect the plaintiff's property taxes in the amount of $3476.48, consisting of $3206.03 in taxes, $240.45 in interest calculated through May 30, 2016, a $24 lien fee and a $6 warrant fee, and the defendant's "lawful charges."

On May 1, 2016, the defendant mailed a letter to the plaintiff, informing it that he was in receipt of an alias tax warrant authorizing him to collect the plaintiff's delinquent real estate taxes for the town of Goshen and enclosing a copy of the warrant. The letter stated, inter alia: "This Alias Tax Warrant commands me to make demand upon you for the sum of $3,997.95, payable to: State Marshal Arthur Quinn, before making any attachments. THIS PROPERTY WILL BE SUBJECT TO TAX AUCTION IF DELINQUENCY REMAINS UNPAID AFTER MAY 30, 2016." The letter further warned: "If no contact is made immediately, we will proceed to attach any wages earned or any existing bank accounts to include but not limited to the seizure of any equipment, property, vehicles, or assets for auction." The letter instructed that full payment of all sums due, including the defendant's statutory fee of $521.47, be remitted to the defendant.

On May 24, 2016, the tax collector received payment from the plaintiff in the amount of $3476.48. The tax collector applied that payment, in accordance with General Statutes § 12-144b, as follows: $453.34 for the defendant's statutory fee of 15 percent of the tax, interest, fees and costs, which totaled $3023.03; $240.45 for accrued interest; $24 for the lien fee; $6 for the warrant fee; and $2752.58 toward the plaintiff's outstanding delinquent tax bill.

After the tax collector applied the plaintiff's payment to its account, the 2014 tax bill still had an unpaid balance in the amount of $453.45 due and owing, in addition to any applicable interest, fees and costs. The plaintiff thereafter submitted payment for that remaining balance.

On July 26, 2016, the plaintiff mailed a letter to the defendant, demanding that he return to it the sum of $453.45 that the town had paid to him as his fee. The defendant did not respond to the plaintiff's demand.

The plaintiff thereafter filed this action, alleging that the defendant was not entitled to a 15 percent statutory fee under § 12-162 because he never executed the alias tax warrant. The plaintiff further alleged that, because the defendant was not entitled to that fee under § 12-162, he was liable to it for conversion of that sum under General Statutes § 52-564.[3]

On September 15, 2017, the parties filed cross motions for summary judgment. The plaintiff argued that it was entitled to judgment as a matter of law on its conversion claim because the defendant collected and retained his claimed fee without executing the alias

tax warrant or collecting the delinquent taxes that the plaintiff owed to the town of Goshen, as required under § 12-162. The defendant countered that "[t]here is no genuine issue as to any material fact establishing that the defendant was at all times acting in his official capacity as a Connecticut state marshal, engaged in the lawful service and execution of a valid alias tax warrant in accordance with applicable law and within the scope of his lawful duties, and thus was lawfully authorized to receive and exercise control of his lawful statutory fee."

On February 27, 2018, by way of a memorandum of decision, the court denied the plaintiff's motion for summary judgment and granted the defendant's motion for summary judgment. In its decision, the court described its task as to determine the meaning of the language, "executes such warrant and collects any delinquent municipal taxes," in § 12-162 (c),[4] and consider that language specifically in relation to General Statutes § 52-261,[5] which pertains to fees and expenses of officers serving process or performing other duties, and § 12-144b, which sets forth the proper order of application of tax payments. The court set forth the applicable law governing our interpretation of statutory language, found that the phrase, "executes such warrant and collects any delinquent municipal taxes," under § 12-162 (c) "is susceptible to more than one reasonable interpretation," and thus concluded that the language is not plain or unambiguous. (Internal quotation marks omitted.) Having so concluded, the court "look[ed] for interpretative guidance in the statutes' legislative history, legislative policy and relationship to other statutes."

The court set forth the following reasoning: "The obvious policy underlying § 12-162 (c), is that, 'if a municipality chooses to use [a state marshal] to collect delinquent taxes, the cost of that collection should be borne by the delinquent taxpayers rather than by those who duly pay their taxes.' See also *New Haven* v. *Bonner*, 272 Conn. 489, 496, 863 A.2d 680 (2005) (concluding same under General Statutes § 12-166 for utilizing a 'collection agency'). 'The tax collector can use an alias tax warrant, which authorizes a [marshal] . . . to collect the delinquent taxes, interest and charges. [§ 12-162 and General Statutes § 12-135 (a)]. The warrant contains language threatening the taxpayer with the sale of his property, garnishment of his wages, or payment from assets in his bank. But its effect also depends on the [marshal's] . . . persistence . . . .' [Office of Legislative Research, Connecticut General Assembly, Report No. 2001-R-0468, Towns' Authority to Contract With Private Agencies to Collect Delinquent Taxes (May 9, 2001)]. . . .

"The court must also interpret [§] 12-162 (c) in light of § 12-144b. In 2013, our legislature made changes to § 12-144b to 'improve tax collectors' ability to collect

taxes . . . .' [Public Acts 2013, No. 13-276, § 20 (P.A. 13-276), Office of Fiscal Analysis, Connecticut General Assembly, Fiscal Note, Senate Bill No. 965, An Act Concerning Changes to Municipal Revenue Collection Statutes]. . . . The 2013 revisions 'modif[y] the order in which tax collectors must apply property tax payments, giving priority to expenses incurred related to the tax and delinquency-related charges before the principal on the oldest outstanding tax . . . .' [P.A. 13-276, Office of Legislative Research, Connecticut General Assembly, Bill Analysis for Senate Bill No. 965, An Act Concerning Changes to Municipal Revenue Collection Statutes]. . . .

"The legislative history of § 12-144b also includes the following: '§§ 20 [and] 43—Order of Applying Property Tax Payments. Under current law, tax collectors must apply (1) tax payments on any specific property to the oldest outstanding tax and (2) partial tax payments or installments on any assessment list containing both real and personal property to the personal property tax first, unless the person making the payment directs otherwise in writing. The bill eliminates these requirements and instead requires tax collectors to apply all tax payments first to outstanding unsecured taxes (i.e., personal property taxes) and then to outstanding secured taxes (i.e., real property taxes). The tax payments for these respective taxes apply as follows: 1. first to expenses, including attorney's fees, collection expenses, recording fees, collector's fees, and other expenses and charges related to a taxpayer's delinquency; 2. next to accrued interest; and 3. lastly, to principal, in chronological order. The bill also specifies that a municipality is not bound by any notation accompanying a tax payment that (1) purports to be payment in full, (2) proposes to waive any of the municipality's rights or powers, or (3) directs the application of the payment in any manner that contradicts applicable law.' Id.

"The legislative history and purpose of § 52-261 is illustrative. In the 2003 revisions to § 52-261, '[t]he bill [Public Acts 2003, No. 03-224 (P.A. 03-224)] increases the fee for a person who levies an execution and either collects and pays money or secures a debt from 10 [percent] to 15 [percent] of the amount of the execution. It increases the minimum fee for this execution from $20 to $30.' [P.A. 03-224, Office of Legislative Research, Connecticut General Assembly, Bill Analysis for Substitute House Bill No. 6476, An Act Concerning State Marshals]. . . . An Office of Legislative Research report provided the following, 'ALIAS TAX WARRANTS. After making a demand for unpaid taxes, a tax collector can issue an alias tax warrant to a state marshal or constable. The alias tax warrant commands the officer to collect the tax, interest, penalty, and charges from the taxpayer. The officer can garnish the taxpayer's wages or collect funds from a bank account or the taxpayer's

goods or real estate ([§ 12-162]). If the officer levies on real estate, the property is sold under the procedures for a tax sale (see below, [General Statutes] § 12-157). The tax collector's fee for issuing an alias tax warrant is $6 ([General Statutes] § 12-140). An officer serving an alias tax warrant is entitled to collect the fees allowed by law for serving executions issued by a court. A state marshal or constable who executes a warrant and collects delinquent municipal taxes receives, in addition to expenses otherwise allowed, 15 [percent] of the taxes collected under the warrant or a $30 minimum (§§ 12-162 and 52-261). The amount a taxpayer owes is not just the amount due on the tax but includes interest on the delinquent portion of the principal of any tax due at a rate of 18 [percent] per year from the time it is due until it is paid ([General Statutes] § 12-146). This is the amount put into the alias tax warrant and the state marshal's 15 [percent] is calculated on this amount. If a state marshal performs some other functions, such as publishing advertisements or conducting title searches, he or she could also be separately reimbursed for costs.' [Office of Legislative Research, Connecticut General Assembly, Report No. 2008-R-0518, State Marshals and Selling Residential Real Estate for Delinquent Taxes (September 10, 2008)]. . . .

"Additional legislative history to P.A. 03-224 addresses a marshal's collection of money under § 52-261. For example, Robert S. Miller, the president of the Connecticut State [Marshal's Association, Inc.], submitted the following relevant written remarks to the [House] [J]udiciary [C]ommittee in support of the 2003 amendments that 'the vast majority of executions [were] both small [and] uncollectible [and] the [marshals] expend[ed] much effort, time and money trying to collect these debts and [made] no money at all,' and that P.A. 03-224, which would increase the fees for executions to [15] percent and raise the minimum to $30, was 'the first raise in [thirteen] years and [would] bring the fees in line with the minimum that collection agencies charge[d].' [Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 2003 Sess., p. 1964]. In addition, Representative Michael P. Lawlor explained in his remarks before the House of Representatives that 'a [s]tate [m]arshal . . . is collecting money on behalf of a creditor' under § 52-261. [46 H.R. Proc., Pt. 17, 2003 Sess., p. 5443, remarks of Representative Lawlor on P.A. 03-224].

"Pursuant to [General Statutes] § 1-2z, the court agrees with the state marshal defendant that §§ 12-162 (c), 12-144b and 52-261 may be construed more broadly than the plaintiff contends, given some purposes underlying these statutes are to make it easier for municipalities to collect delinquent taxes and to have the cost of delinquent tax collection be borne by the delinquent taxpayers rather than by those who duly pay their taxes. The court must next consider the related case law.

"The plaintiff cites to *Danbury* v. *Sullivan*, Superior Court, judicial district of Danbury, Docket No. CV-303581-S (December 4, 1991) (*Fuller, J.*) (5 Conn. L. Rptr. 325), as being directly on point. In that case, the defendant, a deputy sheriff, filed a counterclaim seeking to collect fees related to the collection of delinquent taxes. Id. The city filed a motion to strike, including the second count, which attempted 'to collect sheriff's fees on amounts paid directly by the taxpayer [to the city] for overdue taxes.' Id. In granting the motion to strike the second count, the court found that '[i]t is apparent from the terms of the statute that any deputy sheriff who serves an alias tax warrant is required to collect the fees for serving the execution from the taxpayer, not the municipality. To recover the additional fees under the statute the sheriff must execute the warrant *and collect* delinquent taxes. Merely serving the alias tax warrant on the taxpayer is not enough.' . . . Id., 326. The plaintiff also makes the point that this is not a case of the town hiring a collection agency instead of a marshal. See *New Haven* v. *Bonner*, supra, 272 Conn. 496 (finding 'the obvious policy underlying [§ 12-166] is that, if a municipality chooses to employ a collection agency to collect delinquent taxes, the cost of that collection should be borne by the delinquent taxpayers rather than those who duly pay their taxes'). The . . . defendant contends that *Sullivan* is not persuasive authority because [t]he trial court's interpretation is that there is a requirement of the physical collection of the delinquent tax payment by the marshal, and ignores the reality that, absent the marshal's efforts, no tax payment would have been 'collected' at all. Indeed, the tax was in fact 'collected.' Further, the [court in] *Sullivan* completely ignores the mandates of the tax warrant itself, commanding the delinquent taxpayer to make payment of the delinquent tax to the marshal. . . . The court agrees with the defendant that *Sullivan* has limited persuasive authority given the policy underlying the statutory framework for the collection of municipal delinquent taxes and the development of the law since 1991.

"The . . . defendant argues that he had either actually or constructively seized moneys owed to the town because he performed his official duty and enforced the alias tax warrant. He cites *Corsair Special Situations Fund, L.P.*, v. *Engineered Framing Systems, Inc.*, Docket No. 3:11-CV-01980 (JCH), 2016 WL 128089 (D. Conn. January 11, 2016), where the District Court determined whether the state marshal was entitled to recover his 15 percent fee and construed § 52-261 (a) (2) (F) along with the Appellate Court's decision of *Nemeth* v. *Gun Rack, Ltd.*, 38 Conn. App. 44, 52, 659 A.2d 722 (1995). After reviewing the statutory language, the District Court found that '[w]hen [the state marshal] properly served [the third party] with the [w]rit, he imposed upon [that third party] a legal obligation to pay him the

money it owed the judgment debtor, rather than paying the judgment debtor directly. While [the state marshal] did not actually seize the money that [the third party] owed the judgment debtor, he did constructively seize it by putting [that third party] on notice of its legal obligation to deliver the money it owed the judgment debtor to [the state marshal]. And, given that levy has been defined as an actual or constructive seizure, [the state marshal's] constructive seizure of the debt owed by [the third party] to the judgment debtor constitutes a levy.' *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 2016 WL 128089, *4.

"The case of *Masayda* v. *Pedroncelli*, Superior Court, judicial district of Waterbury, Docket No. CV-94-0120878-S (July 20, 1998) (*West, J.*) (22 Conn. L. Rptr. 449), also provides support for the state marshal defendant's argument. There, judgment was entered by the court for the plaintiffs, and reasonable attorney's fees and costs were awarded. Id. To collect on the judgment, the plaintiffs encumbered [the] defendants' real property with judgment liens. Id. When the debt remained unsatisfied, the plaintiffs applied for and obtained a bank execution. Id. The deputy sheriff served the execution and the defendants objected. Id., 449–50. Subsequently, the defendants' counsel forwarded to [the] plaintiffs' counsel the sum of $18,014.31, which came from a source other than [the] defendants' executed upon bank accounts. Id., 450. The plaintiffs sought payment of the deputy sheriff's fee for levying execution on [the] defendants' bank accounts, in an amount which they claim[ed] [was] $1800 pursuant to the controlling [statute], § 52-261, and argued that the judgment in this case remained unsatisfied in an amount equal to that fee. Id. The defendants denied owing any fee for the levying of the bank execution. Id. 'In the alternative, however, they argue[d] that [if] the sheriff [is] entitled to a fee, that fee would be the statutory minimum of $20 and no more.' Id. The defendants argued that 'for the deputy sheriff to be entitled to anything other than the $20 minimum fee under [§] 52-261, money would have had to have been actually collected or paid over from the accounts against which the execution was levied.' Id. In construing § 52-261, the court found that '[c]ontrary to [the] defendants' reading,' § 52-261 'does not require that the money be collected and paid over from the account levied upon.' Id. The court did not agree with the defendants' reading of § 52-261 to add an additional requirement that the source of payment be considered. Id. 'Certainly, after levying the execution, payment by the debtor directly to the creditor should not deprive the sheriff of his fee.' Id. The court interpreted the statute as indicating the intention of the legislature to entitle a sheriff to his fee when he has performed his duty, although payment is made from another source. Id. 'In accord with the foregoing, the court

[found] that the sheriff ha[d] satisfied the requirements of [General Statutes] § 52-261 . . . [he] levied an execution and the money [was] collected and paid over to the plaintiffs and, as a result, he [was] entitled to his fee of $1800 as provided by said statutes.' Id.

"This court must determine whether the state marshal defendant executed the alias tax warrant and collected any delinquent municipal taxes pursuant to § 12-162 (c), either actually or constructively. In *Benjamin* v. *Hathaway*, 3 Conn. 528, 532 (1821), the Supreme Court, in considering the mode of levy, noted that '[t]he law cannot define precisely, in every case, how these acts shall be done. It prescribes general rules; and these have been complied with.' A broad interpretation of 'levy' is also consistent with *Nemeth* v. *Gun Rack, Ltd.*, supra, 38 Conn. App. 51, where the court found that '[*l*]*evy*,' which is not a defined term in the [Uniform Commercial Code, General Statutes § 42a-1-101 et seq.], should be read broadly as including not only levies of execution proper but also attachment, garnishment, trustee process, receivership, or whatever proceeding, under the state's practice, is used to apply a debtor's property to payment of his debts.'

"In the present case, the . . . defendant performed his duty and enforced the alias tax warrant when he mailed the plaintiff notice of the alias tax warrant and demanded payment. . . . The town's notice of intent to lien, issued on March 8, 2016, already placed the plaintiff on notice that if this type of collection enforcement action was warranted, the plaintiff was responsible for paying all of the costs of collection that are incurred in these efforts, in addition to the taxes, interest and charges due. . . .

"Pursuant to the alias tax warrant, the . . . defendant was 'hereby commanded to collect forthwith' the delinquent taxes. . . . Rather than proceed immediately against the plaintiff by levy on the real estate, goods or chattel owned by the taxpayer, garnish the taxpayer's wages, or to seize the taxpayer's funds on deposit in a bank, the . . . defendant took the less drastic step of sending a demand letter to the plaintiff. The letter made demand for the payment of $3997.95, which constituted the tax owed, $3476.48, interest and fees, plus an additional 15 percent of said amount ($521.47) as part of the marshal fees. After receiving the demand letter, the plaintiff made payment to the town in the amount of $3476.48. From that amount, the town paid the marshal's fees, including the 15 percent fee in accordance with § 12-144b. The . . . defendant should not be denied his 15 percent fee because he took the less drastic step of first sending the plaintiff a demand letter rather than proceeding directly to attachment of the plaintiff's property, wages and/or bank account. The state marshal defendant was clearly engaged in a lawful collection enforcement effort

authorized by the alias tax warrant.

"By analogy to *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 2016 WL 128089, when the . . . defendant sent a demand letter to the plaintiff, he placed the plaintiff on notice of its legal obligation to pay the delinquent taxes and the state marshal defendant's legal duty to collect the delinquent taxes, and, therefore, constructively executed the alias tax warrant pursuant to § 12-162 (c). The plaintiff did not pay the delinquent taxes after the notice of intent to lien, but only after the demand letter was sent. As a result of the state marshal defendant's actions, the plaintiff made efforts to address its tax delinquency. The . . . defendant's efforts in collecting the delinquent taxes were successful without having to resort to further levy and execution on the plaintiff's property. The . . . defendant earned his statutory fee based on his performance of his statutory duties.

"Similar to *Masayda* v. *Pedroncelli*, supra, 22 Conn. L. Rptr. 449, the state marshal defendant is entitled to his fee even though the plaintiff made payment directly to the town. 'In [*Masayda*], the sheriff levied an execution, and the money was actually collected and paid over, albeit not from the accounts levied upon. Contrary to [the] defendants' reading, however, the statute does not require that the money be collected and paid over from the account levied upon. Section 52-261 of the General Statutes is clear on its face. The defendants' reading adds a nonexistent, additional requirement that the source of payment be considered. Certainly, after levying the execution, payment by the debtor directly to the creditor should not deprive the sheriff of his fee.' Id., 450.

"Pursuant to *Benjamin* v. *Hathaway*, supra, 3 Conn. 532, the . . . defendant constructively made levy of the alias tax warrant based upon the totality of the circumstances. The court finds that the . . . defendant satisfied the requirements of § 12-162 (c) and, as a result, he was entitled to collect his 15 percent fee. This finding is also consistent with [the] legislative purpose of the statutory framework for the collection of delinquent municipal taxes. The . . . defendant's efforts made it easier for the town to collect the delinquent taxes, which were months overdue. The . . . defendant's demand letter was effective in satisfying the tax delinquency, and there was no need for further collection efforts; these facts were not reasons to deny the defendant his fee under § 52-261. In addition, the plaintiff should bear the costs of the . . . defendant's efforts rather than town residents who pay their taxes on time." (Citations omitted; emphasis in original.)

On the basis of the foregoing analysis, the court denied the plaintiff's motion for summary judgment and granted the defendant's motion for summary judgment. This appeal followed.

The plaintiff claims on appeal that the trial court erred in determining that the defendant was entitled to the statutory 15 percent fee pursuant to § 12-162 (c) because the defendant neither executed the alias tax warrant nor collected the delinquent taxes owed to the town of Goshen. We disagree.

"Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005). Likewise, issues of statutory construction present questions of law, our review of which also is plenary. See *Hicks* v. *State*, 297 Conn. 798, 800–801, 1 A.3d 39 (2010) (setting forth process of ascertaining legislative intent pursuant to § 1-2z, and noting that, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

The trial court carefully examined the record before it and concluded that the defendant was entitled to the 15 percent statutory fee provided by § 12-162. We agree with the trial court's thoughtful and comprehensive memorandum of decision, in which it thoroughly reviewed the applicable statutory language, its legislative history, and relevant case holdings. Because that memorandum of decision fully states and meets the arguments raised in the present appeal, we adopt the trial court's well reasoned legal analysis, as set forth herein, as a statement of the applicable law on these issues. We are persuaded by the trial court's application of the holding in *Corsair* to this case, particularly in light of the proceedings that occurred in *Corsair* subsequent to the District Court's initial ruling regarding the statutory fee, upon which the trial court in this case relied in concluding that the defendant was entitled to the 15 percent statutory fee.

As noted, the trial court in this case relied on the decision issued by the United States District Court for the District of Connecticut in concluding that the marshal had constructively seized the delinquent taxes that the plaintiff paid to the town of Goshen. Following the District Court's order, Corsair appealed to the United States Court of Appeals for the Second Circuit, which determined that § 52-261 is ambiguous, and thus certified two questions to our Supreme Court. *Corsair Special Situations Fund, L.P.* v. *Pesiri*, 863 F.3d 176, 179–82 (2d Cir. 2017). Our Supreme Court accepted the certification of the following questions: "(1) Was [the state marshal] . . . entitled to a [15] percent fee under the terms of [§ 52-261 (a) (F)]?

"(2) In answering the first question, does it matter that the writ was ignored and that the monies that were the subject of the writ were procured only after the judgment creditor, not the marshal, pursued further

enforcement proceedings in the courts?" Id., 183.

In addressing the certified questions, our Supreme Court agreed with the Second Circuit's conclusion that the language of § 52-261 is ambiguous. *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, 327 Conn. 467, 472–73, 174 A.3d 791 (2018). In construing the phrase "levy of an execution," the court reasoned, inter alia: "As our Appellate Court previously has recognized; see *Nemeth* v. *Gun Rack, Ltd.*, [supra, 38 Conn. App. 52–53] . . . it is generally accepted that a levy of an execution may be satisfied by a constructive seizure of the property that is the subject of the execution. See 30 Am. Jur. 2d 202, Executions and Enforcement of Judgments § 192 (2005) ('A levy on personal property is generally defined as a seizure of the property. Thus, in most jurisdictions, it is essential to the completion of a levy of execution upon personal property that there be a seizure, either actual or constructive, of the property.' . . . Ballentine's Law Dictionary (3d Ed. 1969) p. 728 ('At common law a levy on goods consisted of an officer's entering the premises where they were and either leaving an assistant in charge of them or removing them after taking an inventory. Today courts differ as to what is a valid levy, but by the weight of authority there must be an actual or constructive seizure of the goods.').

"What constitutes a constructive seizure under our law depends on the circumstances, i.e., the nature of what is to be seized and from whom it is to be seized. See General Statutes § 52-356a (a) (setting forth procedures for execution against nonexempt personal property and levying officer's responsibilities).[6] Those circumstances dictate the levying officer's authority, set forth in the writ of execution. When levying an execution on debt owed that is in the possession of a third party, constructive seizure is effectuated when the writ of execution is properly served on, and the demand of payment made to, the third party, provided that the debt has or will mature within the statutory term." (Footnote in original.) *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 327 Conn. 473–74.

The court then turned to the issue of the collection of the debt, reasoning: "The right to the commission fee accrues only after either of two conditions is satisfied: 'when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer . . . .' General Statutes § 52-261 (a) (F). We therefore turn to the question of whether the phrase 'by the officer' modifies the former, as well as the latter, condition.

"Construing the phrase 'by the officer' to apply only to the latter condition is supported by rules of grammar, the genealogy of the statute, and simple common sense. Under the last antecedent rule, '[r]eferential and qualify-

ing words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' . . . 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, pp. 487–89; see, e.g., *Foley* v. *State Elections Enforcement Commission*, 297 Conn. 764, 786, 2 A.3d 823 (2010) (applying rule); *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27, 420 A.2d 905 (1979) (same). There is not clear evidence of a contrary intention in the statutory text, as 'collected' may refer to the debtor/third party from whom the money is being collected or the person collecting the money. Moreover, had the legislature intended for 'by the officer' to apply to the first condition as well, it could have expressed such an intention more clearly by inserting a comma between the second condition and that phrase (when the money is actually collected and paid over, or the debt or a portion of the debt is secured, by the officer). Application of the last antecedent rule also is confirmed by a review of predecessors of § 52-261. For more than a century, the statute provided for the fee 'when the money is actually collected and paid over, or the debt secured by the officer *to the acceptance of the creditor* . . . .' " (Emphasis in original.) *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.*, supra, 327 Conn. 475–76, quoting General Statutes (1902 Rev.) § 4850; accord General Statutes (Rev. to 2001) § 52-261 (a) (6). "It is clear that the italicized phrase would not have applied to the first condition. That phrase necessarily reflected that the officer exercises some discretion in the means or manner by which the debt is secured. The officer exercises no similar discretion when money is collected from the third party or debtor; the officer merely accepts the money that is provided. . . . Accordingly, if the phrase 'to the acceptance of the creditor' did not modify the first condition, then the preceding phrase 'by the officer' similarly would not modify that condition. Although the legislature recently excised the phrase 'to the acceptance of the creditor' from the statute; [P.A. 03-224], § 10; it gave no indication that this change was intended to expand application of the phrase 'by the officer' to the collection of money or that it understood the previous statute to have such a meaning. See 46 H.R. Proc., [supra], p. 5443, remarks of [Representative Lawlor] (explaining that proposed changes 'will make it easier for the marshals to carry out their responsibilities and for the [State Marshal] Commission to conduct the oversight that is called for under the reforms of a number of years ago').

"Finally, common sense dictates that we should not construe the statute to limit the fee to only those circumstances in which the marshal has personally collected the money and paid it over to the creditor, as Corsair

suggests. See *Christopher R.* v. *Commissioner of Mental Retardation,* 277 Conn. 594, 608–609, 893 A.2d 431 (2006) ('[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended' . . .). Corsair's construction of the statute also would deprive a levying officer of the statutory commission if the third party violated the order in the writ by paying the levied upon funds directly to the creditor instead of the officer, whether mistakenly or intentionally. See, e.g., *Fair Cadillac Oldsmobile Corp.* v. *Allard,* 41 Conn. App. 659, 660, 677 A.2d 462 (1996) (after sheriff levied bank execution, bank paid funds directly to creditor, instead of to sheriff, at direction of creditor) . . . see also *Masayda* v. *Pedroncelli,* [supra, 22 Conn. L. Rptr. 449, 450] (after deputy sheriff served bank execution, judgment debtor paid judgment creditor from source other than bank account). Under Corsair's interpretation of the statutory scheme, the officer would not be entitled to the fee, even though the creditor received the benefit of the officer's service because the third party's obligation to the judgment creditor arose only as a result of the proper service of the writ of execution. Corsair's construction would create an incentive for judgment creditors to circumvent the statutory commission, a process that could inure to the benefit of both creditor and debtor by an agreement to reduce the debt by an amount less than the 15 percent fee in exchange for direct payment. . . . Our courts previously have applied common sense constructions to the facts of a given case involving the levy of an execution when a possible reading of the statute would have yielded a result that the legislature reasonably could not have intended. See *Preston* v. *Bacon,* 4 Conn. 471, 479–80 (1823) (sheriff entitled to fee when sheriff had substantially performed, and agreement by creditor and debtor's attorney prevented sheriff from completing final action statute required to be entitled to fee) . . . *Nemeth* v. *Gun Rack, Ltd.,* supra, 38 Conn. App. 54–55 (applying expansive interpretation of time limitation for applying for turnover order when facts made it impossible for judgment creditor to commence and complete levy on goods within period prescribed, and creditor had done everything that could reasonably be required under statute)." *Corsair Special Situations Fund, L.P.* v. *Engineered Framing Systems, Inc.,* supra, 327 Conn. 476–79.

On the basis of the foregoing, our Supreme Court answered the first certified question, "[y]es," the marshal was entitled to the statutory fee. The court answered the second certified question, "[n]o," it did not matter that the writ was ignored by the judgment creditor and the funds were obtained through separate enforcement proceedings. Id., 481.

Upon receipt of our Supreme Court's response to the two certified questions, the Second Circuit determined that the marshal was entitled to the full 15 percent

statutory fee and affirmed the District Court's decision to award that amount. *Corsair Special Situations Fund, L.P.* v. *Pesiri*, 887 F.3d 589, 591 (2d Cir. 2018).

The holding in *Corsair* supports the trial court's conclusion that, by sending the demand letter and a copy of the warrant, to the plaintiff, the defendant placed the plaintiff on notice of its legal obligation to pay the delinquent taxes and his responsibility to collect them, and thereby constructively executed the tax warrant, and thus that the defendant was entitled to his statutory fee under § 12-162. We therefore conclude that the trial court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The town of Goshen and its tax collector, Rebecca M. Juchert-Derungs, were defendants in this action until the plaintiff withdrew its complaint against them on May 4, 2017. As Quinn is the only remaining defendant herein, any reference to the defendant herein is only to him.

[2] The notice of intent to lien stated, in part: "According to our records, your REAL ESTATE taxes are past due. In accordance with CT General State Statute 12-155, payment is hereby demanded for the taxes due on this statement. The Tax [Collector's] Office reserves the right to enforce collection of the taxes listed herein by use of any of the following methods, which include but are not limited to:

"Assign your unpaid account to a Connecticut State Marshal for service of an Alias Tax Warrant and enforced collection. State law provides those servicing tax warrants with the ability to levy upon, seize and sell any real estate, goods and chattels owed by you; to garnish your wages; and to seize funds on deposit in any banking institution.

"Please note that if this type of collection enforcement action is warranted, you will also be responsible for paying all of the costs of collection that are incurred in these efforts, in addition to the taxes, interest and charges due.

"In order to avoid those actions, your account must be * * * PAID IN FULL BY TUESDAY, APRIL 12, 2016 * * * or you must begin to make regular monthly payments. Please call my office to set up a payment agreement. * * * In compliance with State Statute 12-173, a lien will be placed on your 2014 Grand List property taxes on April 14, 2016 if not paid in full at that time.

"Per § 12-144b, I must apply any payment made on this property to the oldest outstanding tax levied with the interest thereon."

[3] The plaintiff also alleged that the defendant violated its rights under the Connecticut constitution. The trial court rejected that claim, and the plaintiff has not challenged that ruling on appeal.

[4] General Statutes § 12-162 (c) provides: "Any officer serving an alias tax warrant pursuant to this section shall make return to the collector of such officer's actions thereon within ten days of the completion of such service and shall be entitled to collect from such person the fees allowed by law for serving executions issued by any court. *Any state marshal* or constable, *authorized as provided in this section, who executes such warrant and collects any delinquent municipal taxes* or water or sanitation charges *as a result thereof shall receive, in addition to expenses otherwise allowed, a percentage of the taxes* or the water or sanitation charges collected *pursuant to such warrant, calculated at the rate applicable for the levy of an execution as provided in section 52-261.* The minimum fee for such service shall be thirty dollars. Any officer unable to serve such warrant shall, within sixty days after the date of issuance, return such warrant to the collector and in writing state the reason it was not served." (Emphasis added.)

[5] General Statutes § 52-261 provides in relevant part: "(a) Except as provided in subsection (b) of this section and section 52-261a, each officer or person who serves process, summons or attachments on behalf of: (1) An official of . . . any municipal official acting in his or her official capacity . . . shall be allowed and paid . . . (*F*) *for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per cent on the amount of the execution, provided the minimum fee for such execution shall be thirty*

*dollars* . . . ." (Emphasis added.)

[6] General Statutes § 52-356a (a) provides in relevant part: "(2) The property execution shall require a proper levying officer to enforce the money judgment and shall state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the money judgment was rendered, the original amount of the money judgment and the amount due thereon, and any information which the judgment creditor considers necessary or appropriate to identify the judgment debtor. The property execution shall notify any person served therewith that the judgment debtor's nonexempt personal property is subject to levy, seizure and sale by the levying officer pursuant to the execution . . . .

"(3) A property execution shall be returned to court within four months after issuance. . . .

"(4) The levying officer shall personally serve a copy of the execution on the judgment debtor and make demand for payment by the judgment debtor of all sums due under the money judgment. On failure of the judgment debtor to make immediate payment, the levying officer shall levy on nonexempt personal property of the judgment debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment, as follows:

"(A) If such nonexempt personal property is in the possession of the judgment debtor, the levying officer shall take such property into his possession as is accessible without breach of the peace;

"(B) With respect to a judgment debtor who is not a natural person, if such personal property, including any debt owed, is in the possession of a third person, the levying officer shall serve that person with a copy of the execution and that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer, provided, if the debt is not yet payable, payment shall be made when the debt matures if within four months after issuance of the execution . . . .

"(5) Levy under this section on property held by, or a debt due from, a third person shall bar an action for such property against the third person provided the third person acted in compliance with the execution. . . ."